May it please the Court, my name is Anthony Haller, and I have the privilege of representing the appellant Patrick Gannon, who I think, as the Court knows, lives and works in Massachusetts. I'd like to reserve four minutes for rebuttal. The central issue in this case is whether, under this Court's heightened standard, Mr. Gannon clearly and unequivocally waived his right to remove an action brought exclusively under the repayment agreement. This is a legal issue subject to this Court's de novo review. We submit that Mr. Gannon did not waive his statutory right to his claim under the repayment agreement in any way, and that the writings here cannot reasonably be construed to meet the clear and unequivocal standard. To some degree, the very fact that we're here debating this issue suggests that we are correct. But the primary consideration, I would urge the Court, as in all cases of contract interpretation, is to look at the language of the writing themselves. The expressed terms are the best indication of the party's intent at the time of signing. So if we look at the agreements here, we must start with the repayment agreement itself. That's at A71 of the appendix. Counsel, are we, what's the approach here? Are we looking at separate agreements, or are we looking at parts of one agreement? Well, I have a two-tier argument in that respect, Judge Smith. But what we submit is that you must first look at the repayment agreement that does not contain a consent to forum. It does not reference any other agreement, it does not incorporate, and it stands alone. And that with respect to the heightened standard, the clear and unequivocal standard, we submit that a consent to venue, which is a waiver of a statutory right, must be within the four corners of the agreement. Is that a case that somehow says this inquiry is different under this heightened standard you're talking about? Well, I think it's- It's counterintuitive to me, frankly. Well, I understand, but this Court has eschewed the 11th Circuit view that clear and unequivocal is ordinary contract. Well, the Weltman, for example, is factually completely irrelevant. Understood, Your Honor. But, so, I- Why don't we just grab this out of it? No, so, well, Your Honor, I think that that is the correct position, because we have to look at something other than ordinary contract principles. But, acceding to the question- We have to, but did you just say abandon? No, no, I don't say abandon them. I say that they inform, but the heightened standard is something different. I asked you for authority that would support that counterintuitive proposition. Contract interpretation is contract interpretation. And our primary argument, Your Honor, is that you must look at the contracts, the writings. So, if one does look at those together, our submission is that they only further support the proposition that Mr. Gannon did not clearly and unequivocally waive. Because, in this case, if you then look, if you apply the rule of construction, which I understand Your Honor says one should, it's one of many rules of construction, and look at the fact that documents were signed on the same day, related to employment, you then still have to look at the wording of the agreement itself. And the employment agreement in this case, on which Medtronic relies, expressly states in Section 2.2 that compensation benefits and other financial terms of Mr. Gannon's employment are set forth in separate documents. I think the offer letter is the glue with the three documents. It's not two contracts, it's three documents, as the district court recognized. And the offer letter says, unless and until you sign both of the others, and this offer letter, there is no contract.  I don't agree with that, Your Honor. I think it's an offer of employment subject to him signing two separate agreements. Medtronic made a conscious decision not to integrate, but to have two separate agreements that stand side by side. And then the- How can you have a contract without a price term? Excuse me, Your Honor? Isn't the separate agreement, the repayment agreement, doesn't that include the price term, salary and benefits and that sort of thing? So how can you have a contract without a price term? It does have a price term. It states what the guarantee was, and then the conditions for repayment. There's nothing in terms of- But only if it's looked at as one agreement with three separate- Well, the employment agreement doesn't inform in any way the rights under the repayment agreement. There's nothing that one can look to in the employment agreement that has any bearing on the- Let me ask it this way. Does the employment agreement alone contain a price term? Meaning his salary? The employment agreement does not. Okay, so how can- That can't stand alone, can it? It stands alone with respect to the subject matter that it covers, and it says these other things related to compensation. It expressly says that things related to compensation, how much you're paid, your benefits, and any agreements related to compensation are in separate documents, and explicitly says this agreement does not affect compensation and benefits in quotes or any agreements related thereto. That's what the words of this contract say. Now, that means that the agreement, the employment agreement, has no effect, no bearing upon, and no influence upon the repayment agreement. That's your interpretation of it. That's not immutable from the words. Well, I think it's giving effect to the ordinary meaning of the words, which is what- But that's only if they're read separately. If under Minnesota law, it seems that when you have separate contracts or separate agreements entered into simultaneously, signed at the same time, entered into like these seem to be, they're to be read together. And reading them together cuts against the argument that you're making. And I believe we're following Minnesota law and interpreting the agreements here. Well, Your Honor, actually, I would say that that's not the rule. I think it's a rule of construction along with many other rules. And what it means is that one looks at if- But you agree that Minnesota- Yeah, but- But the Minnesota position is- You have to look at all of this. The rule is you have to consider whether there are a single contract viewed in the light of all the circumstances to determine the party's intent. And when you have specific words in a contract, which instead of integrating, separate these two things and say one doesn't affect the other, then that means in these circumstances, in the particular facts of this case, it was not the intent of the parties that they be read as a single agreement. That's the application of the rule. And in the lead case, MARSO, the Supreme Court of Minnesota's case, it says explicit and positive language importing a different purpose cannot be overruled but must be given its obvious meaning. And there are many circumstances where you can have contracts on the same day with respect to the same transaction but the parties intend them to be separate. If the repayment agreement- Let me give you an example. Suppose a repayment agreement contained an arbitration provision. I don't think anyone here would be saying that now that the venue provision applies. So the fact that they're signed on the same day at the same time related generally to the same- That's a pretty dramatic assertion. That would get us into arbitration principles and differences of state and federal arbitration law. Your Honor, actually- Don't say that. I mean, it sounds okay but I think it's far more complicated. Well, Your Honor, so if one looks at Williston on this principle, one of the cases that Williston cites is a Southern District of New York case. It's not in the briefs but I'm using it just by example where what I just said was the exact circumstances. A stock purchase agreement, an employment agreement. Employment agreements were actually appended to the stock purchase agreement. Stock purchase agreement has a forum selection. Employment agreement has an arbitration provision. The court said even though they were done on the same day and it's part of the same transaction and appended- Maybe they don't apply that Marco principle. No, it's the same rule. It's the same rule of construction. This comes out- It's not in your briefs. So now we're just wondering. No, I'm- You got us over a barrel here. We can't deal with what you're saying because we haven't read the case. Well, Your Honor, I'm just giving it as an example. It's important. Yeah, but you're talking about New York law and a New York court, a different fact situation and an arbitration clause. No, I'm talking about- Let's stick to this one. I'm talking about the rule of construction, which is- Mr. Hall, let's assume Medtronic paid your client half of the salary that he was expecting and he wanted to sue. Under what agreement would he bring that? He would bring it. He wouldn't bring it under the employment agreement. There's no terms there. That's my point exactly. Right, there's no terms. Wouldn't he have to bring it both on the employment agreement and the repayment agreement because the salary term is contained in the repayment agreement? No, the salary term is not in the employment agreement, Your Honor, that's the point. That's my point. Well, it's not. In the repayment agreement. So his- Wait a minute, wait, wait, wait. He would have to bring that case under both the employment agreement and the repayment agreement because that's where the salary term is at, in the repayment agreement, right? I don't agree with that, Your Honor. What would he bring it under? He'd bring it under the repayment agreement only. Alone, without the employment agreement? No, because it doesn't say, it says the opposite. It says- Where's the term for the period of time? What agreement contains the time? Well, the employment agreement doesn't contain it. The repayment agreement does because it's a guarantee for a two-year period. So you think he could bring it solely under the repayment agreement? Absolutely. The employment agreement has no bearing on the repayment agreement. It doesn't say anything that affects the outcome of a dispute, and that's our point. The two things are separate. They are said to be separate. They stand in parallel, and the venue provision does not apply to the repayment agreement. I reserve some time. I don't know if the Court has any other questions. Thank you. Thank you, Mr. Hiller. Ms. Lemire. Thank you, Your Honors. May it please the Court. My name is Melissa Miro-Lemire from the Maslin Law Firm, and I represent Medtronic. Mr. Gannon's appeal fails because, as the Court has acknowledged, under well-established Minnesota law, documents signed at the same time in the course of the same transaction and for the same purpose are read together as a single contract in the eyes of the law. Well, well-established. Now, Marko asserts it, cites Donnell, and is factually irrelevant. They don't even explain how the principle applied in the Marko case. So, it takes us nowhere factually. The Marso case. So, why don't you discuss with my colleagues, not from Minnesota, the significance of the citation to Donnell's in Marko? Certainly, Your Honors. Whether or not the citation to Donnell's by the Supreme Court of Minnesota reflects what you have asserted is a well-established principle. So, Your Honor, when I say that the doctrine is well-established, what I'm referring to is the fact that this principle has been upheld many times since Marso. Well, what's the factually most relevant case? So, the most relevant case would actually be a case arising in the District of Minnesota, Boston Scientific v. Kyland. This was a case in which the parties had entered into an employee agreement, and another document with a very long name that was referred to as the Agreement Concerning Employment. In that case, there were contemporaneous documents, and the execution of both documents was a condition of the employment offer. There were actually two forum selection clauses. Well, let's, okay, we can read Boston Sci. Sure. Which is the least persuasive authority one can have for Minnesota law, the least controlling, I should say. It may be very, very persuasive. Now, what has the Supreme Court of Minnesota done with Marko since it issued that opinion? So, the Marso line of cases and the principle that the contemporaneous documents. Tell me about the line. I asked a specific question. I'd like to answer it, Your Honor. This doctrine has been applied a number of times at the Minnesota Court of Appeals since Marso. That would have been my next question. Answer the one I asked, please. I do not, I am not aware of a Minnesota Supreme Court case applying Marso, interpreting a case applying Marso since Marso itself, Your Honor. However, it has been interpreted a number of times in the Minnesota Court of Appeals. And those are all in your briefs? Correct, Your Honor. The parties agree that Mr. Gannon received the offer letter, the employee agreement, and the repayment agreement together as a package. He read them all together. He signed them all at the same time. And he returned them to Medtronic in the same email, all in conjunction with the beginning of his employment with Medtronic. Appellant apparently disputes only the applicability of one part of the doctrine, whether the documents were signed for the same purpose. But that argument fails because the documents themselves indicate that the shared purpose of all three documents was to initiate and govern the at-will employment relationship between Medtronic and Mr. Gannon. And in fact, the offer letter itself is the clearest evidence that these documents were signed for the same purpose. Under the express terms of the offer letter, no one of these three documents could have been signed unless all three were signed. They were a package deal. As the district- Counsel, wouldn't other courts that address this issue seem to point out that if parties wanted to integrate these three, they should have just stated that with a simple integration clause? There are multiple ways for parties to manifest intent at the time of contracting, Your Honor. And in evaluating all of the circumstances, Judge Nelson determined, she made a factual determination that the party's, quote, manifest intent was that the three documents be read together as one contract. Certainly, whether there was an integration clause would be one of the facts that Judge Nelson or any judge could consider in determining the party's intent. But in light of the language of the offer letter, which I think Judge Nelson clearly indicated was very persuasive evidence of the party's intent that the documents be construed together, along with the broad language of the forum selection clause, the facts surrounding how the documents were sent, signed, and returned, it was all clear, a clear indication to Judge Nelson of the party's intent at the time of contracting. And so she made a factual determination that the parties did intend for these documents to be read as a single contract. And that determination is reviewed for clear error, a standard that Mr. Gannon cannot satisfy. You heard my hypothetical about Medtronic paying him half of what he's entitled to. Do you agree with your opposing counsel that he could bring that solely under the repayment agreement? I do not, Your Honor. Why? Mr. Gannon would have to bring that claim under both the employment agreement, sorry, the employee agreement and the repayment agreement, because as I indicated earlier, the repayment agreement is not a standalone document. The concept of receiving a guarantee being entitled to a salary is not divorced from the employment itself. Mr. Gannon entered into the documents as a condition. I heard you're getting into into warm, if not hot water, because a suit by a Massachusetts citizen in Massachusetts state court saying an employer in Massachusetts didn't pay me what I was owed is very apt to resist mightily the notion that a forum selection clause in another document required that the suit be brought in state court in Minnesota up to 1,000 miles away. In fact, I doubt that the public policy of almost any state dealing with its own citizen's employment would enforce that. I haven't researched it, but have you? Well, what I can say, Your Honor, is that we are not dealing with a Massachusetts employer. We're dealing with a Minnesota employer. I'm dealing with your answer to Judge Grunder's question. Sure, and so perhaps I was not clear. That is a good reason why the forum selection, the strict forum selection clause was in the breach of covenant contract and not in the wage contract. Medtronic did not recite all of the boilerplate provisions in each of the three documents, and I don't think that the court has ever held that that was required, that it was required to do so in order to have a clear contract. The way that the forum selection has to be, if not clear and unequivocal, at least it has to leap out from the terms of the instrument. And there is no, there's actually no argument from appellant that the provision itself, the forum selection provision itself is clear and unequivocal. Their objection is its applicability, not whether it is clear and unequivocal on its own. And as Judge Nelson found, it is the language of the forum selection clause is sufficiently similar to language that has been upheld as clear and equivocal in a number of other cases. She, in the Valsbar v. Sherman case from 2016, Judge Nelson applied the clear and unequivocal standard to substantially similar forum selection language and determined that it satisfied that principle. So the issue is whether the claim under the repayment agreement is embraced by that clause. And under the doctrine that all documents signed at the same time for the same purpose and in the course of the same transaction be interpreted together, and that all provisions be given effect with respect to all of the documents, it must be the case that the one and only forum selection clause in this multi-document contract govern claims that arise out of one of the documents within that contract. And that is Medtronic's position here, and that is the finding that Judge Nelson made in her remand order. I don't think it's the finding. I apologize, Your Honor, the conclusion. The applicability of the doctrine was a conclusion of law in Judge Nelson's remand order. Interpretation of the contract, which is also an issue of law. Correct, which is. Unless we get into the ambiguous contract swamp. Right, and I agree not only that it is. If this is, if the reading of the multiple documents is a question of construing an ambiguity, where do we go? Well, so Judge Nelson didn't actually need to evaluate, or didn't need to make an initial finding of ambiguity before evaluating all three documents contrary to appellant's position under Farrell v. Johnson. Well, now wait a minute. You just said something sequentially. A court always begins with the question of ambiguity under almost all the state laws that I'm aware of, at least in our circuit, including Minnesota. That's the first step. Maybe I wasn't clear. What I'm saying is that there was no, there is no requirement that there be an initial finding of ambiguity in order to step outside of the four corners of the repayment agreement. In fact, to determine whether to apply the doctrine, which for shorthand purposes we'll call the Marceau Doctrine to determine whether to even apply that doctrine. What Chief Judge Smith said, what if the absence of a simple integration clause in a situation where you would expect to find it, why isn't that an ambiguity? It's not an ambiguity because you start out by, once you've determined what the party's intent was at the time of contracting, if the party, if the court determines that the parties did intend for the documents to be read together, then it construes the documents as a single contract and there is no ambiguity internally in this situation. However. Well, then even if you read them together, isn't it an ambiguous when an important constraint such as a forum selection clause is found in only one of the three documents? I don't believe that a clear non-equivocal forum selection clause in one of the documents gives rise to ambiguity, Your Honor. However, if the court did. What if we disagree? Sure. Back to where I started. Sure. If the court did find that there was ambiguity in the contract, then the court could go outside to look at the, to discern the intent of the parties, which is a similar analysis as that which Judge Nelson conducted. There was no extrinsic evidence submitted on that. That's correct, Your Honor. No, we can't do it. That's correct. However, at that point, I believe the court would be conducting an analysis of the or related to language to determine whether it was sufficiently clear and unequivocal that claims related to, as opposed to those arising directly out of the employee agreement would be encompassed by the forum selection clause. And as Judge Nelson articulated in the remand order, because of the circumstances surrounding the execution of the documents and the return of the documents and the language of the offer letter itself, the claim based on the repayment agreement was sufficiently related to the employee agreement such that it would be embraced by that forum selection clause as well. I'm not sure that's the extrinsic evidence I'd be interested in. Well. If I was the fact finder. And. I'd be interested in the, why the drafters of these agreements, which are, I assume, forum documents, I wouldn't call them take it or leave it, with employees functioning at this salary level, but they're probably not negotiable or negotiated typically. But we don't have that. We don't know the origins of this particular triage, so to speak. That's correct, Your Honor, and that's because this removal and remand took place before any discovery had happened in this case. So we have none of those facts. I think the district court has plenty of discretion on a threshold issue to have a threshold inquiry. That's correct, and the district court has the discretion to remand, and it did so following a factual finding of the party's intent at the time of contracting. I see that my time is up, unless the court has any further questions, I ask that the court affirm Judge Nelson's remand order in all respects. Thank you. Thank you, Ms. LeMayer. Mr. Heller, your rebuttal. May it please the court, just a few points. I'd like to first mention that there are only two cases cited by Medtronic that involve a forum selection provision in this type of context, and both of them, the Arca case and the Boston Scientific case, situations where the one agreement integrated the other. So I think that that's very important. So that brings me, I think that, to me, the question, Judge Grunder, that you have asked more than once, I think is the key. A claim under the repayment agreement has nothing to do with the employment agreement. The employment agreement covers non-solicitation, non-compete, inventions, confidentiality. The repayment, and it says nothing about compensation, it says the opposite. It says, it- Does it say anything about duties and position and the, you know, the actual work? It has some general language about duties, but nothing that relates to the guarantee and the repayment obligation. To have both sides of the contract, don't you have to have duties and employment, and then you get compensation, and therefore, don't you have to read those together? No, because what matters here is what did the repayment agreement said, and what was the sales plan under which the regame, and that's not in the employment agreement. That's a separate agreement. Remember, when he signed the employment agreement, he signed like six or seven different documents. The repayment agreement was only one of them. So, the repayment claim does not get resolved in any way by the employment agreement. Employment agreement doesn't inform that claim in any way, and the absence, to Judge Smith's point, of the integration clause in the repayment agreement is very significant, and when we come, Judge Loken, to the rule, the Minnesota rule that you referenced, it's one has to look at the intent of the party in all the circumstances. As you've pointed out, this was in the nature of a non-negotiable contract. Medtronic's a very sophisticated party, knows how to integrate if they want to, but they presented separate agreements. They didn't put forum in. They didn't reference or integrate the two things. They do the opposite. They say one does not affect the other explicitly. The employment agreement has no effect on compensation, that is the sales compensation plan, or any agreements related to, there to, that's the repayment agreement. So, when you put all those circumstances together, which is the rule of construction, in this case, one is led, at minimum, I submit, to the point that there's uncertainty, and if there's uncertainty in the context of applying the clear and unequivocal standard, then this court, I submit, must find in favor of Mr. Gannon in terms of the fact that he didn't clearly and unequivocally waive, and that's, I think, how the court should approach this analysis, and if there is ambiguity, and I think this discussion has led to clarity that there are two competing interpretations, both valid, I suspect, in the court's mind, the court's grappling with both of them, but the moment we accede to the fact that there are two competing interpretations, then that does not meet the clear and unequivocal standard. It's a statutory right, and we could have a nice debate as whether it's really federal law or state law that should apply, and that is not yet decided. I think the circuits are split on that. We're informed by the contract principles, but it is a higher standard. It's not ordinary contract principles. This court in Wellman made that very, very clear. So with that, I appreciate the court's time. It's been a privilege. Thank you. Thank you, Mr. Heller. Thank you also, Ms. Lemire. Court thanks both counsel for your presence and the argument which you've provided to the court this morning. The briefing which you have submitted will take the case under advisement.